■ LOUISE HOBSON, Plaintiff, v UNION LABOR LIFE INSURANCE COMPANY et al., Defendants.—Submission of a controversy (CPLR 3222) in an action to recover the proceeds of an accidental death benefit policy issued by the defendant insurance company to covered members of General Building Laborers' Local No. 66 through the defendant Welfare Fund. Judgment directed in favor of defendants dismissing plaintiff's cause on the merits,

without costs or disbursements. It appears from the agreed facts set forth in the "Submission of Controversy", that plaintiff's decedent had been a member of General Building Laborers' Local No. 66 (Local 66) and that, as such, he had been issued certificate No. 67, effective May 1, 1969, as an insured under two group insurance policies issued to the trustees of the Local 66 Welfare Fund (Welfare Fund) by the defendant Union Labor Life Insurance Company (the insurer). Under those policies, plaintiff's decedent was covered for $5,000 under a group life insurance policy and for $5,000 under a group accidental death benefit policy. Both group policies establish initial eligibility for participation, with initial eligibility being granted to each person who works in covered employment within an "Insurance Half" for 400 hours or more. Insurance halves are stated to be January 1 through June 30, and July 1 through December 31. Continuing eligibility is defined, in relevant part, as follows: "Each registered Person shall continue to remain eligible for benefits during the Insurance Half if he has worked at least 200 Hours in covered employment during the preceding Insurance Half, except that a registered Person's eligibility for benefits shall cease during such part of the Insurance Half in which he is employed in other than in covered employment". Another provision of the policy deals with "Termination of Persons Insurance" and provides, in relevant part, as follows: "Except as provided in the Extended Death Benefit provision, a Person's insurance will terminate upon the occurrence of the first of the following events: * * * 2. the Termination of the Person's membership in the classes eligible for insurance hereunder * * *. *EXCEPTION:* A registered laborer shall be considered to be in covered employment and shall receive credit accordingly where he * * * is unable to work by reason of total unemployment, provided that in [that] instance he has and continues to make a genuine and sincere effort to obtain work at the trade". The group life insurance policy contains a provision entitled "Conversion Privilege", which authorizes an insured, upon application to the insurer within 31 days following termination of his insurance under the policy, to convert his group coverage to a policy of individual life insurance. The group policy for accidental death benefits contains no such provision. The group life insurance policy also contains a provision, absent from the accidental death benefit policy, which is entitled "Death Benefit Under Conversion Privilege", and which declares that the amount payable under the policy will be paid to the designated beneficiary if the insured dies during the 31-day conversion period. The group accidental death benefit policy, in the section entitled "Termination of Person's Insurance", unlike the group life insurance policy, contains an introductory sentence which reads, "Except as provided in the Continuance of Insurance provisions, a Person's insurance will terminate upon the occurrence of the first of the following events." One of the events listed is "the modification of the Policy to terminate one or more forms of insurance enumerated herein under the 'Schedule of Insurance.' " In all other respects, the eligibility and termination provisions of both policies are identical. There is no further definition in the stipulated facts of the terms "covered employment" or "schedule of insurance." The group accidental death benefit policy does provide for conversion of the hospital, surgical and miscellaneous hospital expense benefits, but not for conversion of the accidental death benefits to a policy of individual accidental death coverage. It is also stipulated that, prior to September 19, 1973, plaintiff's insured, being unable to obtain work with employers who had contracts with Local 66, took a temporary job as a farm laborer and that "under the Continuing Eligibility provisions of said policies * * * insurance on the life of SPENCER

J. HOBSON terminated under [both group insurance] policies * * * effective August 31, 1973, the date he last worked in covered employment." On September 19, 1973 the insured suffered injuries in his work as a farm laborer which caused his death on the same day. Plaintiff thereupon sought payment under both policies. After being refused payment by the insurer, she brought suit for the sum of $10,000. The insurer paid her $5,000 under the group life insurance policy after it determined that the insured had died within 31 days of the date of termination of his life insurance policy and was, therefore, covered by the "Death Benefit Under Conversion Privilege." The balance of the stipulated facts state that the insurer denies liability for accidental death benefits because the group accidental death policy contains no conversion privilege upon termination. The insurer, however, concedes that the insured died as a result of an accident, that he would have remained eligible under the terms of both group insurance policies "until December 31, 1973, since he had worked 200 hours in covered employment from January 1, 1973 to June 30, 1973, except for the fact [that] he became employed in other than covered employment, as required in said policies, on or about August 31, 1973", that prior to the decedent's acceptance of employment as a farm laborer, economic conditions in the building industry were poor and there was little work available for building laborers, and that "decedent attempted to secure work as a Union Laborer both before and after accepting work as a farm laborer." On the stipulated facts it is clear that, as of August 31, 1973, the decedent lost his eligibility for benefits under the "Persons to be Insured" provision of the accidental death benefit policy, since he then went to work in other than covered employment. Plaintiff seeks to establish an ambiguity by reading that provision together with the "Exception" in the "Termination of Persons Insurance" provision, which continues eligibility for one unemployed by reason of total unemployment provided he made and continues "to make a genuine and sincere effort to work at the trade". However, the decedent was no longer able to work at his trade and had made his election to accept employment in other than covered employment even though, under the plain language of the accidental death benefit group policy, he was thereby rendering himself ineligible for coverage thereunder. The parties are bound by the plain terms of the policy (see *Weiss v Preferred Acc. Ins. Co. of N. Y.*, 241 App Div 545, 549–550). Margett, Damiani and Rabin, JJ., concur; Titone, J., dissents and votes to direct judgment in favor of the plaintiff, with the following memorandum, in which Cohalan, Acting P. J., concurs: I do not agree with the majority's determination that the language contained in the accidental death policy rendered the decedent ineligible for continued coverage thereunder because he accepted temporary employment as a farm laborer during a time when there was a dearth of activity in the building construction industry. In my opinion, the recital in the policy that the person's eligibility for benefits ceases when he is employed in other than covered employment, is ambiguous when read alongside of the clause which provides, *inter alia*, that coverage continues when the policyholder "is unable to work [in his trade] by reason of a work stoppage * * * or * * * total unemployment". Under the insurer's interpretation of the clauses in dispute, in order to remain "covered" during any lull in building construction, the decedent, besides making a sincere effort to obtain work in his field, as the policy explicitly states, would also have been obligated, although the policy does not so state, to refrain from engaging in any type of temporary employment. I sincerely doubt that such a construction was within the reasonable understanding or contemplation of the decedent. Exclusion or limitation of liability by an

insurer is not favored by the courts unless such intention is apparent from the language employed in the insurance contract (see *Milstein v Ortner,* 65 Misc 2d 649). Language used in an insurance contract must be given its ordinary meaning, the meaning which the average policyholder of ordinary intelligence would attach to it. If an exclusion of liability is intended, which exclusion is not apparent from the language employed, it is the insurer's responsibility to make such intention clearly known (see *Baldinger v Consolidated Mut. Ins. Co.,* 15 AD2d 526, affd 11 NY2d 1026). Furthermore, I have strong doubts as to the validity of a clause in a policy which attempts to discourage an insured from taking temporary employment in another field during a cyclical economic recession in the industry in which he is normally employed. In my opinion, such a clause would be against public policy since it would foist upon an able-bodied insured the unpalatable choice of deciding whether to have himself and his immediate family either subsist on public welfare, unemployment insurance benefits, or the largesse of friends or relatives, or else suffer the loss of insurance coverage should he accept interim employment in another field. Accordingly, I vote for entry of judgment in favor of plaintiff.